UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KRISTOPHER HANCOCK** | **CIVIL ACTION** |
| **VERSUS** | **No. 07-3200** |
| **DIAMOND OFFSHORE DRILLING, INC.** | **SECTION "C"** |

### ORDER & REASONS [1]

Before the Court are Motions for Summary Judgment filed by Kristopher Hancock ("Plaintiff") and Diamond Offshore Drilling, Inc. ("Defendant"). (Rec. Docs. 35 & 36). Said Motions were filed pursuant to this Court's Order dated June 6, 2008, and concern two issues: 1) Plaintiff's remaining claim for "loss of chance" and 2) Defendant's claim for an offset for advances on wages paid to Plaintiff. For the following reasons Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.[2]

### I. Background:

The undisputed facts reveal that Plaintiff was employed by Defendant in January 2005 as a member of the crew of the OCEAN VOYAGER, a Mobile Offshore Drilling Unit owned and

---

[1] Jacob Goehring, a third year law student at the University of Alabama, assisted in the preparation of this decision.

[2] Defendant Statement's of Uncontested Material facts to which the Plaintiff did not respond are deemed admitted.

1

operated by Defendant. (Rec. Doc. 35-2 at 2). Plaintiff filed suit for damages under the Jones Act and General Maritime Law, and also a claim for maintenance and cure. Plaintiff claims that Defendant failed to provide immediate and adequate medical care to Plaintiff and that Plaintiff has a right to pursue a "loss of chance" claim against Defendant under the Jones Act.

The Defendant argues in its motion that Plaintiff was working a 14 day hitch from January 11-25, 2005 when he began to experience nausea and other stomach-related symptoms. The exact date of onset of the symptoms is a matter of some dispute between the parties, but not controlling for present purposes. Defendant argues that the symptoms were first reported on the day before crew change. Plaintiff maintains that he notified Defendant's employees of his medical complaints, and that they refused to release Plaintiff from the rig early from the hitch.

On January 28, 2005, three days following his arrival home, Plaintiff saw his family physician, Dr. Terry Pitts, to whom he provided an account of his abdominal symptoms. Plaintiff was then treated by a gastroenterologist, Dr. Stephen Johnson, who diagnosed Plaintiff as suffering from ulcerative colitis after a colonoscopy performed on February 16, 2005,

Defendant contends that approximately two months after Plaintiff first sought treatment with Dr. Pitts, Dr. Johnson determined that the prescribed therapy was not working and recommended that Plaintiff be re-evaluated by a colon-rectal surgeon. As a result of this recommendation, Plaintiff's condition was re-evaluated by Dr. David Margolin, a colon-rectal surgeon at Ochsner Clinic, on March 28, 2005. Dr. Margolin treated Plaintiff with antibiotics for one week before Plaintiff opted to undergo a colonectomy which took place on April 4, 2005.

Defendant argues in its motion that Plaintiff's loss of chance claim is a remedy that is not

available in Jones Act or General Maritime Law cases and that Plaintiff's claims should be dismissed in their entirety as a matter of law.  Alternatively, if a viable claim remains, Defendant argues that advances on wages should be offset against any award to Plaintiff for past lost wages.

Plaintiff argues in his motion that his loss of chance claim exists under the Jones Act because of the recognized duty to provide immediate medical treatment and the featherweight causation requirement attendant to a Jones Act claim.   He also maintains that the $25.00 per day maintenance payment did not reasonably provide for Plaintiff's daily living expenses and that the jury should determine whether any alleged "offset" for advances on wages should be made.

## II. Standard of Review:

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001).  When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, however, "the

burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

The "initial burden" imposed on the moving party has two parts: the burden of production and the ultimate burden of persuasion. *Celotex Corp.*, 477 U.S. at 330. The manner in which the moving party may satisfy the burden of production "depends upon which party will bear the burden of persuasion on the challenged claim at trial." *Id.* at 331. The Supreme Court identified two methods for a moving party to meet its burden of production when the burden of persuasion belongs to the non-moving party at trial. "First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim." *Id.* Alternatively, "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Thus, the moving party must either 1) submit affirmative evidence that negates an essential element of the opposition's claim, or 2) demonstrate that the oppositions evidence is insufficient to establish an essential element of their claim to satisfy the burden of production. *Celotex Corp.*, 477 U.S. at 331.

**III. Analysis:**

**"Loss of Chance"**

The Defendant argues that the Fifth Circuit has rejected the loss of chance doctrine on two occasions.  In *Bach v. Trident Steamship Co.*, 920 F.2d 322 (5th Cir. 1991), a Fifth Circuit maritime case involving a suit by the survivor of a river boat pilot who died from a heart attack on board a vessel, the Fifth Circuit declined to adopt the loss of chance of survival doctrine after undisputed medical testimony indicated that the pilot had no more than a 15% chance of surviving had the crew rendered medical aid.  In declining the invitation to adopt the loss of chance of survival doctrine, the Fifth Circuit stated:

> Under this doctrine, which as far as we can tell, has been
> confined to medical malpractice cases, plaintiffs who cannot
> meet the ordinary standards of causation are allowed to recover
> for negligent conduct that decreases their chances of survival.
> [Citations omitted].  We decline the invitation to apply this
> doctrine in this section 905(b) case, well beyond the context
> in which it has been developed.  Bach's survivors have therefore
> failed to prove causation and failed to persuade us to adopt the
> loss of a chance of survival doctrine.  They therefore may not
> recover negligence for the failure of the crew to administer CPR.

*Id.* at 327.  Thus, the Fifth Circuit was not willing to adopt the loss of chance relaxed causation standard in a case decided under federal law and in a context other than medical malpractice.  Furthermore, in the underlying district court decision in *Bach*, Judge Carr observed the lack of maritime case law where the loss of chance claim was recognized.

The Fifth Circuit declined to recognize the loss of chance claim again in *Phillips ex rel Phillips v. Monroe County*, 311 F.3d 369 (5th Cir. 2002), in which the survivor of an inmate who died of testicular cancer while incarcerated brought a wrongful death suit under 42 U.S.C. §

1983. Plaintiff claimed that the decedent was wrongfully delayed in receiving chemotherapy treatment and argued that it was not necessary for her to prove that chemotherapy would have saved the decedent's life, but, rather that it was only necessary for her to prove that Defendants' actions or inactions increased the decedent's risk of death from the cancer. *Id.* The court declined to apply the loss of chance doctrine to Plaintiff's § 1983 claim, noting that it is most often applied in medical malpractice contexts. *Id.* at 375. The Defendant argues that there is no Fifth Circuit case law recognizing the loss of chance under the circumstances presented here.

In response, Plaintiff suggests that the Court should first recognize that Defendant had a duty to provide immediate medical treatment when Plaintiff complained to Defendant while aboard the vessel. (Rec. Doc. 36 at 1) (citing *Stiward v. United States,* 2008 WL 2001039 (E.D. La. May 7, 2008)). Plaintiff asserts that, under the Jones Act, he is not required to prove by a preponderance of the evidence that Defendant's failure to provide prompt medical treatment caused his condition. *Id.* at 2. Rather, according to Plaintiff, the Jones Act imposes only a "featherweight" burden of proving causation, in which a seaman must show that his injury was caused in whole or in part, by his Jones Act employer's negligence. *Pechawer v. Art Catering, Inc.*, 2007 WL 2127824 (E.D. La. July 25, 2007).

Plaintiff further argues that although there may not be a Jones Act case which uses the term 'loss of chance', several Jones Act cases do address similar fact patterns wherein the seaman's injury was not causally related, by a preponderance of the evidence, to the employer's negligence. *See Gorman v. Prudential Lines, Inc.*, 637 F. Supp. 879 (S.D. NY. 1986) (holding that seaman's claim was not defeated simply by the fact that his coronary artery disease would

have ultimately resulted in a heart attack even without the employer's negligence contributing to the heart attack). Plaintiff also argues that the Fifth Circuit cases Defendant cites are not controlling because neither involved the Jones Act or the "featherweight" causation standard which apply to this case. (Rec. Doc. 36 at 3). According to Plaintiff, *Bach* should be read to support Plaintiff's claim because it notes the special duty imposed upon Jones Act employers and did not extend its ruling to Jones Act rescue claims. *Bach*, 920 F.2d 322, fn. 4.

*Bach* did not involve a Jones Act claim, and no case has been cited by either Plaintiff or Defendant in which the loss of chance of survival relaxed causation doctrine was considered in a Jones Act context. However, as noted by Defendant, *Bach* and *Phillips* demonstrate that the Fifth Circuit has been unwilling to apply the loss of chance doctrine when federal law gives rise to the cause of action. Furthermore, recognizing a loss of chance claim under the Jones Act would create inconsistencies between the Jones Act and the General Maritime Law decision in *Bach* not to recognize loss of chance. The tendency in the jurisprudence has been to harmonize the two bodies of law. *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).

In a Jones Act case, a seaman has the burden of proving by medical testimony that his injuries were due to the defendant's negligence. *Ginther v. Sea Support Services, L.L.C.*, 2001 WL 1602154 (E.D. La. Dec. 12, 2001). Although a Jones Act plaintiff need not present medical evidence that defendant's negligence was the proximate cause of the injury, a medical expert must be able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the injury for which the plaintiff seeks damages. *Johnson v. Horizon Offshore Contractors, Inc.*, 2008 WL 916256 at *4 (E.D. La. March 31,

2008). Even assuming the loss of chance claim exists, causation is still a required element, even if "featherweight." The Court notes that this burden is not weightless. According to *Carmody v. Pronav Ship Managment, Inc.*, 224 F.R.D. 111, 127 (S.D. NY. 2004), "a jury is not permitted to speculate on proximate cause in the absence of reasonably persuasive proof on the issue."

In the present case, the deposition of all of Plaintiff's treating physicians were taken, along with an IME gastroenterologist, Dr. David Silvers. Each physician refused to affirmatively opine that the delay between the onset of Plaintiff's symptoms and his departure from Defendant's vessel played any part in exacerbating Plaintiff's illness or necessitating surgery.

Dr. Pitts conceded at his deposition that he was not qualified to render an opinion, based on a reasonable medical probability, as to whether Plaintiff's delay in obtaining medical attention caused him to need to undergo a colonoscopy. (Rec. Doc. 35, Ex. A). Dr. Margolin refused to venture an opinion as to whether a delay in getting Plaintiff off the drilling rig, more probably than not, was a cause of Plaintiff's ultimately having his colon removed. To render such an opinion, he believed, would be pure speculation. (Rec. Doc. 35, Ex. B). Dr. Silvers, the IME physician, testified definitively that any delay between Plaintiff's first becoming symptomatic and his leaving the rig had no impact on the course of his disease or the necessity of surgery. (Rec. Doc. 35, Ex. C). Finally, Dr. Johnson, Plaintiff's treating gastroenterologist, testified that he could not, with a degree of reasonable medical probability, state that Plaintiff would not have had to undergo surgery had he sought treatment earlier and that to render such an opinion would be "[p]ure speculation." (Rec. Doc. 35, Ex. D).

In this case, the facts fail to provide any medical evidence that any delay in treatment on board the vessel had any adverse impact on the course of Plaintiff's disease.  Courts have determined that a medical expert must be able to articulate that more than a mere possibility of a causal relationship exists between the defendant's negligence and the injury for which the plaintiff seeks damages in order for a seaman to meet this burden.  *Johnson,* 2008 WL 916256 at *4.

Here,  Plaintiff cannot prove causation even under the lenient standards of the Jones Act. Following his exit from the vessel, Plaintiff received anti-biotic treatment for nearly three months prior to surgery and all of the doctors have refused to testify to any causal relationship between conduct by Defendant to Plaintiff's eventual surgery.  Therefore, Defendant's Motion for Summary Judgment on the issue of Plaintiff's "loss of chance" action is GRANTED and Defendant's offset for advances on wages as a matter of law entitlement claim is moot. [3]

**IV. Conclusion:**

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment **is** GRANTED.  (Rec. Doc. 35).

IT IS FURTHER ORDERED that the Plaintiff's Motion for Summary Judgment is DENIED.  (Rec. Doc. 36).

The parties shall advise the Court in writing whether any issues remain for trial within

---

[3] Defendant sought judgment as a matter of law that it was entitled to an offset in the amount $ 4,207.95 representing advances on wages paid to Plaintiff against any amount awarded to Plaintiff in past wage losses.  Because no Jones Act or General Maritime law claims remain, the offset issue is moot.

ten days.

    New Orleans, Louisiana, this 7th day of August, 2008.

                                          HELEN G. BERRIGAN
                                          UNITED STATES DISTRICT JUDGE